Campbell v. Roddy.

ROBERT CAMPBELL et al., appellants,

*v.*

BERNARD RODDY and LOUIS F. MUNSON, trustees, respondents.

A vendor of an engine, boiler and machinery, knowing that they were to be annexed to real estate, took a chattel mortgage upon them for a part of the price, but failed to register it. The mortgagor of the chattels afterwards annexed them to real estate upon which he had already given a mortgage.—
*Held*, that the lien of the chattel mortgagee should be protected, so far as it would not diminish the security which the real estate mortgagee would have had if the annexation had not been made.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Roddy v. Brick, 15 Stew. Eq. 218.*

*Mr. J. D. Bedle,* for appellants.

*Mr. A. V. Schenck,* for respondents.

The opinion of the court was delivered by

REED, J.

The question presented by this appeal arises out of the circumstance that a mortgagor of real property, after making the mortgage, had annexed to the real estate certain chattels in which a third person claimed to have an interest. On a bill filed to foreclose the mortgage, a contest arose as to the right of the

mortgagee to have all the property applied primarily to the payment of his mortgage, regardless of the interest which any other person may have had in the annexed property before its annexation.

The facts, as they appear more in detail, are the following: Riley A. Brick and wife gave a mortgage to Roddy and Meinzers, trustees, on a certain lot of land, with the buildings and improvements thereon erected. The buildings were designed for use as an iron foundry. The mortgage was dated May 17th, 1880, and was made to secure the payment of notes to the amount of $10,000 made by Brick to these trustees. On May 29th, twelve days after this mortgage was executed by Brick and wife, Brick purchased of one Robert Campbell a large lot of machinery and other personal property for the sum of $30,000. $10,000 of the consideration were paid in cash. Four promissory notes were given by Brick to Campbell, each dated May 1st, 1880, each for the payment of $5,000, and each containing the following words:

"It is further agreed that the title to the property for which this note is given shall remain in said Robert Campbell until this note is fully paid."

As security for a portion of these four notes, Brick gave to Campbell, on the day of the sale, May 29th, a mortgage for $10,000 on the same real estate already mortgaged to the trustees. The sale of the chattels was evidenced by a writing given by Campbell, the vendor, to Brick, the vendee, also dated May 29th, 1880. It is a bill of sale with the following proviso:

"Provided, however, that this sale is made upon the express condition and agreement that in case of default of payment of either of the said notes, then this conveyance to be void and of no effect, and the possession of the goods shall revert to the party of the first part."

Then follows a power conferred upon the vendor, in such case, to take possession and sell, and pay himself out of the proceeds, rendering the surplus, if any, to the vendee. A part of the chattels so sold by Campbell to Brick was, with Campbell's

knowledge, placed in the buildings on the premises already mortgaged to the trustees. They were so annexed to the mortgaged real estate that, as between the mortgagor, Brick, and the trustees, the mortgagees, they became a part of the mortgaged premises.   *Butler* v. *Page, 7 Metc. 40 ; Clary* v. *Owen, 15 Gray 522; Murdock* v. *Gifford, 18 N. Y. 28; Walmsley* v. *Moore, 7 C. B. (N. S.) 115.*

There was, indeed, no denial, on the argument of the appeal, that, as between the mortgagor and mortgagee, the steam boiler, engine-jacks, and those chattels which the trustees claim in their bill of foreclosure as part of the real estate, were so attached as to become incorporated into the realty.

But, as already remarked, the contest is not between the mortgagees of the realty and a mortgagor claiming that he had an interest in property which he had annexed, and claiming that that interest was unaffected by the pre-existing mortgage.   A third person, namely, the vendor of the chattels, claims that he had an interest in them which was not lost or impaired by reason of their annexation of the mortgaged real estate by the act of the vendee of the chattels, who was, at the same time, the mortgagor of the real estate.   It is admitted that Campbell had an interest in the chattels previous to their annexation.   What the character of that interest was may afford some ground for discussion.   If the agreement which is found in the body of the several notes is to be resorted to for the purpose of establishing the extent of his rights, it appears that the title to all these chattels remained in him until divested by payment of the notes.   *Cole* v. *Berry, 13 Vr. 308.*

If, however, the bill of sale, signed by both the vendor and vendee, is the source from which he derives his interest, it is difficult to see how the vendor had anything apart from the naked power to take possession and sell, upon the happening of a certain event.   The bill of sale did not provide that the title should remain in the vendor.   By its terms, the title passed to the vendee absolutely, with the proviso that the possession should revert to the vendor upon default in payment of the notes.   A chattel mortgage at law arises only when the title rests with the mort-

gagee with a defeasance upon performance of a condition. By the terms of this bill of sale, the title resided in the vendee, and the vendor only retained a right to take possession and sell in the future, which power was one not coupled with a present interest. *Parshall* v. *Eggart, 52 Barb. 367 ; Holmes* v. *Hall, 8 Mich. 66; Bonsey* v. *Amee, 8 Pick. 236; Hunt* v. *Rousmanier, 8 Wheat. 174.*

But, in reaching the intention of the parties in respect to the character of the sale, we must read the papers together, and if, from the language used in the notes read in connection with the proviso in the bill of sale, it appears that it was understood that the title should remain in the vendor but for a special purpose only, namely, to secure the notes, then the transaction should, in equity, be regarded as a chattel mortgage. It may be laid down as a general rule, says Judge Story, subject to few exceptions, that, whenever a conveyance, assignment or other instrument transferring an estate is originally intended between the parties as a security for money or for other encumbrance, whether this intention appear from the same instrument or from any other, it is always considered, in equity, as a mortgage, and, consequently, is redeemable upon the performance of the conditions and stipulations thereof. *2 Story's Eq. Jur. § 1018.*

Coupling the clauses which I have mentioned, contained in the contemporaneously executed papers, I think that there is exhibited an intention to leave the title in Campbell as a security only, with a power of sale upon the part of the vendor and the power to redeem by payment on the part of the vendee. This would fix upon the transaction the character of the chattel mortgage.

The chattel mortgage was not refiled, in conformity with the statute, so as to preserve its validity against creditors and purchasers. The mortgage, however, was good as between the parties thereto at the time of the annexation of the chattels, and the mortgagees of the real estate stand neither in the light of creditors nor of subsequent purchasers.

The facts, then, present the bare question : What is the position of a mortgagee of real estate into which mortgaged chattels have

become incorporated by the act of the mortgagor, subsequent to the execution of the real estate mortgage?

The elementary rule of the common law was *quicquid planta-tur solo solo cedit.* It may be stated, as a rule of great antiquity, that whatever is affixed to the soil becomes, in contemplation of law, a part of it, and is, consequently, subjected to the same rights of property as the soil itself. *Broom's Maxims 268.* But many exceptions have become engrafted upon this rule.

"The law of fixtures," says Kent, "is in derogation of the original rule of common law which subjected everything affixed to the freehold to the law governing the freehold, and it has grown into a system of judicial legislation, so as almost to render the right of removal of fixtures a general rule instead of being an exception." *2 Kent's Com. 343.*

The question whether property is or is not a fixture arises most frequently between the tenant of a particular estate and those in reversion or remainder. As between these parties it is held, by a well-settled line of cases, that the intention of the tenant making the annexation is one of the three tests to be resorted to in ascertaining the nature of the property. It is equally well settled that, in instances aside from those, the mental attitude of the person making the annexation cannot modify the legal effect resulting from an incorporation into the realty of that which was personal property. Thus a structure erected on the land of another will become the property of the owner of the land, although built with a view of enforcing an adverse right in the land. *Sudbury* v. *Jones, 8 Cush. 184; Lee* v. *Risdon, 7 Taunt. 188; Wilde* v. *Waters, 16 C. B. 637; Overton* v. *Williston, 31 Pa. St. 155.*

An intent existing alone in the mind of him who makes the annexation, however, differs from another feature, which is recognized in the cases as preserving the personal character of the property annexed. That feature consists in the existence of a mutual agreement, express or implied, between the owner of the real estate and the chattels, in respect to the manner in which chattels shall be regarded after their annexation. Such an agreement seems to be entirely efficacious in preserving the personal character of the annexed chattels as between the parties thereto.

*Pope* v. *Skinkle, 16 Vr. 39; Harlan* v. *Harlan, 20 Pa. St. 303; Ewell on Fix. 66.*

This rule, which seems simple enough when applied to a cause arising between the respective real and chattel owners, becomes more difficult of application when the rights of persons other than these owners are involved. The additional question then arises, how far such an agreement between these parties can affect purchasers, mortgagees, or judgment creditors of the owner of the real estate on the one hand, or of the chattels on the other hand. The courts of New York have accorded to an agreement between the owner of land and one owning or having an interest in annexed chattels, very great efficacy. Those courts hold that such an agreement is valid, not only against a prior mortgagee of the land, but also against a subsequent mortgagee or purchaser without notice. In the case of *Tifft* v. *Horton, 53 N. Y. 377*, it was held that neither a precedent nor a subsequent mortgagee of real estate can claim property which has been annexed to the mortgaged premises under an agreement between the owner of the fee and the owner of the chattels, to the effect that the latter shall remain personalty. In *Ford* v. *Cobb, 20 N. Y. 344*, it was held that a duly filed chattel mortgage upon iron salt-kettles and an iron arch-piece preserved their character as chattels even against the subsequent purchaser of the land, to which land the owner had annexed the chattels. So the rule in New York seems settled that such an agreement will affect not only the parties to it, but all prior and subsequent interests in the realty.

The supreme court of Massachusetts has taken a different view of the force of such an agreement. In *Pierce* v. *George, 108 Mass. 78*, a chattel mortgage was given on machinery which the mortgagee knew was to be annexed to real property, and after it had been annexed, a mortgage was given on the realty, and it was held that the real estate mortgagee could hold the machines as a part thereof. In the case of *Hunt* v. *Bay State Iron Co., 97 Mass. 279*, a question arose in respect to the effect of such an agreement between the owner of iron rails and a railroad company which purchased them. The query was whether the agreement would preserve the character of the rails as chattels, after

they had been affixed to the road-bed, as against a previous mort-gagee of the road or a subsequent purchaser without notice.   It was held that the agreement to which they were not parties could affect neither purchasers nor prior mortgagees, and, as to them, the rails became real estate.   So, in the supreme court of Iowa, in *Stillman* v. *Flenniken, 58 Iowa 450,* it was held that such an agreement would not affect the rights of a purchaser of real estate at a judicial sale.   It may be remarked that the New York cases seem to be in confusion as to whether the existence of a chattel mortgage upon the personalty at the time of the annexation by the mortgagor amounts to an agreement that the chattel shall re-main such.   The case of *Voorhees* v. *McGinnis, 48 N. Y. 278,* holding that it did not amount to an agreement, is apparently re-cognized in *Tifft* v. *Horton, supra,* and left in doubt in the last case of *Sisson* v. *Hibbard, 75 N. Y. 542.*   I do not regard this ques-tion as material in the present cause, from the standpoint whence I view it, nor do I think it essential to follow the doctrine of those cases which give to the agreement the greatest force in pre-serving the chattel character of the property, or of those cases which concede to the act of annexation the greatest force in trans-forming the chattels into realty.   Whether the chattel mortgage in the present cause was registered or unregistered, it, as between the parties thereto, created a lien in favor of the mortgagee upon the engines and machinery mortgaged.   The interest of the mort-gagee of the chattels as well as that of the prior mortgagee of the real estate, under the doctrine respecting mortgages, both real and personal, which obtains in this state, were mere securities. *Woodside* v. *Adams, 11 Vr. 417.*

The inquiry naturally arises how far this lien of the chattel mortgagee can be preserved after the annexation.

It will be observed that the question now presented differs radically from that which would have arisen, had the real estate mortgage been executed subsequent to the annexation of the chattels.   As between a lienor who consents to have the subject-matter of his lien transmuted into a shape by which subsequent purchasers and mortgagees are liable to be subjected to deceptive dealings, there seems to be no equitable ground upon which the

Campbell *v.* Roddy.

lien should be recognized against an innocent subsequent mortgagee or purchaser for value. The entire spirit of our registry acts is opposed to the notion that, in such a juncture of affairs, the real estate purchaser would not be regarded as a *bona fide* purchaser against whom the chattel mortgage would be void. But, as already observed, the real estate mortgagees, in the present case, held their lien before the attachment to the realty of the mortgaged chattels. It is true that by force of the annexation they would become subjected to the lien of the real estate mortgage absolutely, unless the lien of the chattel mortgagee intervenes. Any property belonging to the mortgagor, which he chooses to annex to the mortgaged premises, becomes realty. But it is difficult to perceive any equitable ground upon which the property of another, which the mortgagor annexes to the mortgaged premises, should inure to the benefit of a prior mortgagee of the realty. The real estate mortgagee had no assurance at the time he took his mortgage that there would be any accession to the mortgaged property. He may have believed that there would be such an accession, but he obtained no right, by the terms of his mortgage, to a lien upon anything but the property as it was conditioned at the time of its execution. He could not compel the mortgagor to add anything to it. So long therefore as he is secured the full amount of the indemnity which he took, he has no ground for complaint. There is therefore no inequity towards the prior real estate mortgagee, and there is equity toward the mortgagee of the chattels, in protecting the lien of the latter to its full extent so far as it will not diminish the original security of the former. As already remarked, the real estate mortgagee is entitled to any annexation made by his mortgagor of his own property, but is not entitled to the property of others. The property of the mortgagor in these chattels, when he made the annexation, was an equity of redemption. So far as this interest had a value it became subjected to the lien of the prior real estate mortgagee, but the value of his interest was the value of the property subjected to the lien.

The supreme court of the United States has enunciated a rule which I regard as analogous to the one now propounded. It is

in respect to the acquisition of property by a railroad company which has already given a mortgage upon its road and franchises and upon future acquired property. The doctrine announced is, that the mortgage attaches itself to the property in the condition in which it comes to the mortgagor's hands. In the language of Justice Bradley, in the case of *United States* v. *New Orleans R. R. Co., 12 Wall. 362,* it only attaches to such interest as the mortgagor acquires, and if he purchase property and give a mortgage for the purchase-money the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage or judgment or recognizance, can displace such mortgage for purchase-money. This rule was followed in *Fosdick* v. *Schall, 99 U. S. 235.* It is true that, in the opinions in these cases, there is a statement that the rule would be different if the articles upon which the lien existed became incorporated into the road itself. Instances may be imagined where the exception so indicated would be proper. Where the articles are of such a character that their detachment would involve the dismantling of an important feature of the realty, their annexation might well be regarded as an abandonment of the lien by him who impliedly assented to the annexation. Shingles, lumber, brick to be used in a building, railroad iron or ties to be used in constructing a railroad, are apparent samples of such a class of chattels. I am not prepared to say, however, that even in such instances there may not be an equitable method of awarding to a prior mortgagee of the realty all his rights, while preserving in some degree the interest of the lienor of the chattels. For, in my view, the equitable way of dealing with the property is, to preserve the right of the prior real estate mortgagee to the same degree of security which he would have enjoyed had the property remained as when mortgaged. The preservation of that right in its full measure would, in some instances, be entirely inconsistent with the recognition of any remaining adverse right in an indistinguishable portion of the realty. The question involves merely the practical application of equitable principles to the diverse interests. I regard the

Campbell v. Roddy.

case above cited as relevant, because I see no greater legal diffi-
culty in preserving the lien upon property which would other-
wise become subjected absolutely to the lien of a prior real estate
mortgage by way of accretion or estoppel, than if it became
subject to such mortgage by an express agreement that the
mortgage should cover after-acquired property.

In the practical application of the equitable rule that the lien
on the chattels must give way to the previous lien upon the real
property in the degree already indicated, there is no difficulty
where the annexed chattels, as in the present case, are a distin-
guishable and separable part of the realty.  If the detachment
of the articles so annexed will occasion no damage to the realty,
then the lien upon them can be enforced in the same degree as if
they had remained chattels.  If the detachment would occasion
some diminution in the value of the freehold, as it would have
stood had the attachment not been made, then the depreciation
must first be made whole to the real estate mortgagee before the
right of the chattel mortgagee can be recognized.  So far as
appears, in the present case there can be no appreciable injury to
the realty occasioned by the removal of the engines and chattels.

It is perceived that the view above indicated does not rest
upon an agreement which preserves the chattel nature of the
engines.  It rests upon an equitable preservation of the lien
upon chattels after they are transmuted into realty.  The limit-
ation upon the otherwise legal effect of the annexation, is merely
to this extent.  The mortgagor's interest in the chattels is not
relieved from the legal result arising from the annexation.  If
an engine worth $10,000 is attached by the mortgagor of land
so as to become a part of the land, I see no reason why it should
retain its character as personalty because there happens to be a
previous chattel mortgage upon it for $500.  The equity of
redemption is covered by the prior real estate mortgage.

This view may lead to an inquiry, when the occasion arises,
whether such annexation will cause a modification of the legal
remedy of the chattel mortgagee.  It may also, where, as in this
case, only a part of the chattels covered by one chattel mortgage
are annexed, call for a marshaling of securities for the purpose

of ascertaining whether the portion annexed is still liable for any or what portion of the sum still due upon the chattel mortgage. When, however, as seems to be probable in this case, the totality of the mortgaged chattels will be needed to answer the claims secured, the application of the rule is simple.

The conclusion is that the decree below should be reversed, and the cause remitted to the court of chancery. If it there appears that the equity of redemption in the chattels is valueless, that court can exclude them from the sale under the foreclosure decree. If it appears that there is some valuable interest in the equity of redemption, the court can then either confine the sale to that interest so far as the sale concerns these chattels, or can order them to be sold absolutely and leave the rights which the parties have in them to be adjusted in making a disposition of the money arising from the sale.

For affirmance—VAN SYCKEL, BROWN, PATERSON, WHITAKER—4.

For reversal—THE CHANCELLOR, CHIEF-JUSTICE, DEPUE, DIXON, KNAPP, MAGIE, REED, SCUDDER, CLEMENT, COLE, McGREGOR—11.