The plaintiff, being a stockholder of the New Bern Lighting and Fuel Company, hereinafter called the gas company, a corporation, instituted this action in behalf of himself and all creditors of the corporation, alleging the insolvency of the defendant corporation. Upon the demand of the plaintiff, a receiver was appointed to wind up its affairs. The court directed the receiver to advertise for claims against the defendant, and authorized and directed said receiver to determine the priority of all claims which were contended to be encumbrances on the property of defendant. Whereupon S.W. Smallwood filed claim for $60,000, evidenced by coupon bonds of the defendant and secured by a deed of trust or mortgage, duly authorized and duly executed on 30 June, 1906, and recorded 9 July, 1906, in the office of the Register of Deeds of Craven County, conveying two lots, therein described, all gas works, pipes, etc., all property of every kind, and "also the rights, easements and additions to said plant, and equipment and rights that shall be made prior to the time the said bonds are paid off or discharged." The bonds were thirty-year bonds, bearing five per cent. interest per annum, payable 1 July and 1 January of each year. The defendant defaulted in the payment of taxes, in the interest on the bonds due 1 July, 1908, and in other covenants specified in its deed.
On 23 March, 1907, after the registration of the mortgage to secure its bonds, the defendant entered into a written agreement with the Empire Gas, Improvement and Construction Company, which we will designate as the Empire Company, by which the Empire Company agreed to furnish certain specifically described apparatus used for the manufacturer of gas, and to erect the same in defendant's plant, for the sum of $3,500, $1,750 of which to be paid when materials were delivered and the remainder to be paid within six months after completion of the work; the note evidencing the deferred payment was executed 1 September, 1907, at six months. It was stipulated in said contract as follows: "It is further understood and agreed by the parties hereto, anything to the contrary notwithstanding, that the apparatus mentioned (64) in the annexed specifications is to remain the property of the party of the first part until all the amounts specified herein to be paid by the party of the second part are paid to the party *Page 63 
of the first part. If such payment or payments are not made, as herein provided, by the party of the second part, the party of the first part shall have the right to enter the premises and plant of the party of the second part and remove the apparatus," etc. This conditional sale agreement was registered on 9 January, 1908, in the office of the register of deeds of Craven County. The apparatus so purchased was installed between 23 March and September and was used thereafter by the gas company as a part of its plant. The receiver, under the order of the court, allowed the claim of Smallwood, holder of the bonds and interest thereon, and held that it was a first lien, subject only to unpaid taxes, upon all the property of the defendant, including the apparatus furnished by the Empire Company and included in its conditional sale agreement, finding in reference thereto the following facts:
Special lien claimed against the defendant corporation. Empire Gas, Improvement and Construction Company, of New York, claims title to the machinery sold by it to the defendant corporation until all payments due upon said machinery under a contract of sale shall have been fully paid. Your receiver has carefully examined this claim, and finds that the contract of sale was executed 23 March, 1907, and that the machinery was immediately shipped, delivered and installed in the defendant corporation's plant at New Bern, North Carolina, and that the last payment on it had fallen due and the defendant corporation had failed to meet the payments. The said contract of sale under which claimant claims title to the machinery was not recorded in the office of the register of deeds of Craven until about 6 or 8 January, 1908, The parties to this contract sale acted without notice to the trustees of the deed of trust securing the bond, and without the consent of the said trustee, and the said deed of trust was recorded in the office of the register of deeds of Craven on 30 June, 1906, and had been on record for several months before the contract of sale referred to was made. The said deed of trust securing the bonds constitute the first lien on all the property conveyed to the defendant company, and also a first lien on the rights, easements and additions to the said plant, and equipments and rights that shall be made prior to the time the said bonds are paid off and discharged. The two gasmaking machines existed at the New Bern Gas Works at the time of the above conveyance, and they existed also at the time of the execution and recording of the deed of trust, and at the time the said contract of sale (65) was executed by claimant company and the New Bern Lighting and Fuel Company. As a result of the purchase of the machinery above claimed, one of the two gas machines that were originally in the plant was taken out and dismantled, and its parts have been scattered about in various places; some of the parts have been sold, and it would *Page 64 
now be impossible to again install them, except at a very large expense, while the other apparatus has been greatly damaged. The building in which the new machinery furnished under the said contract of sale has been installed has been so changed as to render it unfit for the purpose for which it was formerly used, and could not be again used for such purpose, except by the expenditure of a large sum of money. For these reasons your receiver is of the opinion that it would not be just or legal to allow the claim of the Empire Gas, Improvement and Construction Company, so as to retain title to the said machinery referred to in said contract, so as to defeat the lien of said bonds; and therefore disallows the claim as to title, but recommends that it be allowed as a debt against the insolvent corporation.
The Empire Company excepted to this finding. His Honor heard the matter at November Term, 1908, and filed his judgment 11 January, 1909. It was agreed at the said term that his Honor could take all the time he desired, and that all motions and exceptions should be made and the judgment should be entered as of November Term. His Honor, in his judgment, finds the facts affecting the claim of the Empire Company substantially as the receiver, and further finds the following sums due the Empire Company under its contract: $1,750, with interest from 1 September, 1907, and $154.47, with interest from 1 October, 1907, and "that the gas manufacturing machine, the property furnished under said contract by the Empire Gas Company to the defendant is worth $3,000 and the entire plant is worth $26,688." The Empire Company excepted to the findings of fact and the judgment of his Honor, assigning as one of its grounds therefor "that there is no finding as to the amount of injury or damage, if any, caused the property of the defendant by the installation of the property furnished by the Empire Gas Company under the terms of its contract." The judgment adjudged the priority of the lien of Smallwood as holder of the bonds to the amount of $60,000 over the claim of the Empire Company, and further adjudged costs against the Empire Company incurred in trying the exception filed by it. The Empire Company appealed to this Court.
After stating the facts: In our opinion, the judgment of his Honor cannot be sustained upon facts found by him. After a careful consideration of the authorities cited by the learned counsel appearing before us, and the consideration of other authorities our own researches have found, we think a very clear statement of the principle controlling one feature of this case is found in Jones on Chattel *Page 65 
Mortgages (5 Ed.), sec. 133a, as follows: "One holding a mortgage of the realty has no equitable claim to chattels subsequently annexed to it. He has parted with nothing on the faith of such chattels. Therefore the title of a conditional vendor of such chattels, or of a mortgage of them, before or at the time they were attached to the realty, is just as good against the mortgagee of the realty as it is against the mortgagor." 19 Cyc., 105;Campbell v. Roddy, 44 N.J. Eq., 244; Waller v. Bowling, 108 N.C. 289;Belvin v. Paper Co., 123 N.C. 138; Binkley v. Forkner, 117 Ind. 176;Bank v. Elmore, 52 Iowa 541; Lumber Co. v. Rank, 57 Neb., 323; Anderson v.Creamery Co., 8 Idaho 200; Potter v. Cromwell, 40 N.Y. 287; Eaves v.Estes, 10 Kan. 314; Teaff v. Hewitt, 1 Ohio State, 511.
The mortgagee (Smallwood), however, resists the contention of the Empire Company, the vendor, by conditional sale contract, upon the grounds (1) that the chattels, as annexed, are by the express terms of his mortgage embraced in it, under the words, "additions to said plant"; (2) that he had no notice of the claim of the Empire Company or that its chattels were being annexed to the plant; (3) that the Empire Company knew that the purpose of the gas company was to annex said chattels as permanent additions to said plant, and that the annexation could be done only by dismantling a part of the plant in its then condition; (4) that the Empire Company had notice of the Smallwood mortgage by reason of its registration; (5) that the Empire Company was guilty of laches in the registration of its conditional sale contract.
Conceding the correctness of his position on his first point of contention, it is not, under the authorities, conclusive of his superior right to claim the annexed chattels. Although embraced within the terms of the mortgage to secure Smallwood, the chattels were also probably so annexed as to become part of the freehold, though there is no definite finding by his Honor as to the manner of the annexation. If the apparatus sold by the Empire Company were neither additions to the plant nor annexed thereto as fixtures, Smallwood could not, in any view, have a lien upon them. It is only because of the express (67) terms used in the mortgage, or because the chattels have been attached as fixtures, that Smallwood can assert any claim to them. In Jones on Mortgages (4 Ed.), sec. 158, this author says: "The mortgage (speaking of an existent mortgage) attaches to the property in the condition in which it comes into the mortgagor's hands. If it be at that time already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time.United States v. R. R., 12 Wall., 362. In Tift v. Horton, 53 N.Y. 377, the Court said: "Another consideration makes it clear, I think, that in this case the absence of a concurrent intention on the part of the prior *Page 66 
mortgagees is of no weight. . . . Hence I conclude that the agreement of the owner of the land with the plaintiff, as it did fully express their distinct purpose that the annexation of boiler and engines should not make them a part of the real estate, was sufficient to that effect without any concurring intention of the defendants as prior mortgagees."
In Lumber Co. v. Lumber Co., 150 N.C. 282, Pou was the holder of the first mortgage, containing an after-acquired property clause, executed by the Gay Lumber Company. His mortgage was recorded. Subsequently thereto the lumber company acquired lands and thereafter executed a mortgage to the Hickson Lumber Company, which company denied the priority of Pou's mortgage on these after-acquired lands. On this point Mr. Justice Brown, in his able opinion, said: "It is undoubtedly true that if the appellant had a lien on these lands at the date they were acquired by the Gay Lumber Company, which it could enforce against that corporation, it could enforce it against Pou, for the after-acquired property clause only attaches to such interest as the mortgagor acquires, and it would be immaterial whether Pou had notice of such lien or not." In no one of the many cases examined by us has notice to the prior mortgagee of the realty of the annexation of chattels covered by a chattel mortgage or conditional sale been considered as determinative of his superior right or as important in fixing the rights of the respective mortgagees. Upon the third point of the contention of Smallwood, to wit, the knowledge of the Empire Company that its apparatus was to be annexed to the gas company's plant or to become additions thereto or as a substitution for other apparatus then in use. In Binkley v. Forkner, 117 Ind. 176, the Court, in a well-considered opinion, upon this point said: "Accordingly, the proposition is well sustained that one who purchases machinery with a view that it shall be annexed to or placed in a building, of which he is the owner, and (68) who executes a chattel mortgage on the property so purchased, thereby evinces his intention that the property shall retain its character as personalty, regardless of the manner in which it may be annexed to the freehold. Eaves v. Estes, 10 Kan. 314; Ford v. Cobb,20 N.Y. 344; Sisson v. Hubbard, 75 N.Y. 542; Tift v. Horton,53 N. Y., 377; Campbell v. Roddy, 44 N.J. Eq., 244." But it will not be understood that parties may, by their convention and at their will, convert chattels real into chattels personal. If at the time of the agreement the chattels personal have been annexed to and become affixed to the realty, their character as a part of the real estate cannot be subsequently changed by a convention of the owner of the real estate with a stranger, so as to conclude the rights of prior mortgagees or creditors *Page 67 
or subsequent purchasers for value. The fourth point of contention has been considered in what has already been said.
The contention of Smallwood that his security will be diminished by permitting the Empire Company to remove its chattels so as to enforce its lien remains to be considered. The proper adjustment of the rights of the respective mortgagees can be secured by the application of sound and just equitable principles. "Whether the chattel mortgage shall be postponed, notwithstanding the agreement between the owner of the land and the mortgagee, must depend upon the inquiry whether or not the preservation of the rights of the holder of the chattel mortgage will impair or diminish the security of the real estate mortgage as it was when he took it. If it will not, then it would be inequitable that the latter should defeat or destroy the security of the former. If it will, then it was the folly or misfortune of the holder of the chattel mortgage that he permitted the property to be annexed to a freehold from which it cannot be removed without diminishing or impairing an existing mortgage thereon." Binkley v.Forkner, supra; Campbell v. Roddy, supra.
The facts found by his Honor are not sufficient to enable us to adjust the interests of Smallwood and the Empire Company in accordance with the equitable principles announced. While his Honor finds the value of the plant, at the date of the receiver's report, to be $26,688, including the value of the apparatus and chattels sold by the Empire Company, which he appraises at $3,000, there is no ascertainment of the value of the plant at the time the annexation of the chattels of the Empire Company took place and the apparatus then used removed. Although his Honor finds that some of the apparatus of the gas company was dismantled, scattered and its value perhaps totally destroyed by the installation of the apparatus acquired from the Empire Company, yet it would not necessarily follow that the value of the gas (69) company's plant as an entirety was diminished or the security of Smallwood lessened. It may be that this substituted apparatus was more economically operated and more efficient in production.
Lastly, Smallwood complains that the Empire Company delayed the registration of its conditional sale contract until 9 January, 1908. Up to that time, and even for some time afterwards, Smallwood seems to have had no cause for complaint. There was, up to them, no default by the mortgagor, the gas company, of which he complains. He parted with nothing of value to the gas company upon the faith of this security during this delay, and we do not see how he was prejudiced by it. He lost none of his rights by it, nor was he delayed in the enforcement of any of his rights under his mortgage deed, and no other parties are complaining of the delay. *Page 68 
In United States v. R. R., 12 Wall., 362, the Court said: "A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires; and if he purchase property and give a mortgage for the purchase money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage, or judgment, or recognizance, can displace such mortgage for purchase money. And in such cases a failure to register the mortgage for purchase money makes no difference. It does not come within the reason of the registry laws. These laws are intended for the protection of subsequent, not prior, purchasers and creditors." This, it seems to us, accords with our own decisions and rests upon the soundest principles of right and equity.
We therefore conclude there was error in his Honor's judgment, and the same is reversed and this cause is remanded for further proceedings in accordance with this opinion.
Reversed and remanded.
Cited: Lancaster v. Ins. Co., 153 N.C. 291; Bank v. Cox, 171 N.C. 80;Dry Kiln Co. v. Ellington, 172 N.C. 484.
(70)