## QUINBY vs. THE MANHATTAN CLOTH AND PAPER COMPANY and others.

1. Whether property ordinarily treated as personal goes with the realty as fixtures or otherwise, is not determined by its capability or incapability of being detached and removed from the premises without injury to the freehold, but depends upon the particular circumstances of the case.

2. As between mortgagor and mortgagee, when the fixture appertains to the real estate, is necessary for its enjoyment, and is permanently attached to the freehold, it will be treated as realty.

3. The permanency of the fixture depends upon the motive and intention of the party in attaching it. If attached for temporary use with the intention of removing it, the mortgagor may remove it; *aliter*, if attached for the permanent improvement of the freehold.

4. That fixtures were called personal property in the deed to the mortgagor for the premises, and a bill of sale therefor accompanied the deed, cannot affect their character as between mortgagee and mortgagor.

5. The requisites for determining the character of a fixture as realty, or otherwise, are: 1. Actual annexation to the realty, or something appurtenant thereto; 2. Application to the use or purpose to which that part of the realty with which it is connected, is appropriated; 3. The intention of the party making the annexation, to make a permanent accession to the freehold.

On motion to dissolve an injunction issued upon the petition of the purchasers of the mortgaged premises at sheriff's sale under foreclosure, to restrain the receiver of the Manhattan Cloth and Paper Company from selling fixtures which he had detached from the premises, and had advertised for sale on account of the company, who were the owners of the equity of redemption.

*Mr. N. Perry, Jr.*, for the motion.

*Mr. C. Borcherling*, contra.

THE CHANCELLOR.

On the 11th day of November, 1873, the mortgaged premises in this cause were sold, under the execution, to the petitioners, John McLorinan and William H. Haines, for $6240. They consisted of a lot of land in Newark, on which there was, at the time of the sale, a three story brick building, thirty feet by ninety feet on Hoyt street, a rear three story brick building, twenty-four feet by seventy-four feet, a two story office building, eighteen feet by twenty-five feet, a one story frame building, twenty-five feet by eighty feet, a one story brick boiling-house, twenty feet by forty feet, and a one story brick and frame building, twenty-five feet by forty feet; which last building had been used as an engine and boiler-house. In the buildings there were three steam boilers, (two horizontal and one upright,) with about ten thousand feet of steam piping, connected with the boilers and running through the buildings and returning to the boilers. These pipes were used for heating purposes, in the manufacture for many years carried on in the premises. Some of them were placed on pieces of wood along the floor, and the rest along the walls and partitions; the latter pipes being supported in place by iron rests or brackets, nailed upon pieces of wood, which were firmly nailed to the walls or partitions with wrought iron nails or spikes. There was also a steam engine connected with the boilers by a steam pipe. The engine and the

steam pumps each rested upon a brick foundation, built for it, extending in depth about two feet below the surface of the ground. · The engine was embedded in cement on its foundation, and secured upon it by anchor bolts about four feet in length. The two horizontal boilers were built into the walls of the building ; the upright boiler was set and embedded in cement on a brick foundation built for it, extending below the surface of the ground. It was connected with the horizontal boilers. There were also two pieces of shafting in the buildings, connected in the usual way with the engine and the machinery, for which it was intended to supply power. Part of it, an iron bar holding several wheels and pullies, was put in by the Manhattan Cloth and Paper Company, to run two small embossing machines they had placed in one of the buildings, situate about twenty-five feet from the boiler building. The rest was in a room near the boiler room. The only connection the shafting in the small building had with the building, was that it was supported by two hangers of iron, one at each end of the bar, which were fastened into wooden supports which depended from the roof beams. The embossing machines had been removed before the sale, and are not in controversy.

. After the sale by the sheriff and before the delivery of the deed to the petitioners, as purchasers of the mortgaged premises, George M. Totten, as receiver (under proceedings in New York) of the Manhattan Cloth and Paper Company, proceeded to detach all of these fixtures, except the horizontal boilers, and advertised them for sale on account of the company, who were the owners of the equity of redemption of the premises when the bill was filed. The petitioners thereupon applied to this court to restrain the receiver in the premises, and an injunction was granted accordingly. A motion is now made, on behalf of the receiver, to dissolve the injunction. Affidavits have been taken on both sides, and used on the argument.

It is alleged on the part of the receiver, that the engine, steam pumps, upright boiler, piping and shafting, are all

personal property, and can be removed without material injury to the building.

It appears that there were, when the bill was filed, two mortgages upon the premises ; one was foreclosed in this suit ; the premises were sold subject to the other, a mortgage of $5000 and interest. The upright boiler, with about two thousand feet of the piping, was put in after the mortgage in suit in this cause was executed. All the rest of the fixtures, except the shafting put in by the company for the embossing machines, was on the premises and in place when the mortgage was executed. The horizontal boilers and one of the steam pumps, were put in about 1856, together with a large part of the steam pipes. The engine was put in in 1867, and in connection with it, the other steam pump and the shafting referred to as being in the room near the boiler-house, were put into the building at the same time. The mortgage under which the premises were sold by the sheriff, was for $5000 and interest, and was made January 2d, 1869. The company purchased the premises of the petitioners, who were then the owners of them, in 1871, and the latter conveyed the premises to the company by deed, dated September 15th, in that year, subject to the two mortgages thereon, which amounted together to $10,000 of principal, besides interest, the payment of which the company thereby assumed.

The deed to the company contains the following clause : " The steam engine, boilers, fixtures, &c., in and upon said premises, and other personal property more particularly described in a bill of sale bearing even date herewith, made between John McLorinan and William H. Haines and the parties of the second part, go with said premises, the price of the same being included in the consideration money hereof."

It is admitted that the horizontal boilers are part of the realty; but, as before stated, the receiver claims that all the rest of the fixtures are personal property. The premises were from the time of the erection of the buildings thereon, used for manufacturing purposes, for which they were built. The

machinery and fixtures were such as were appropriate and necessary for the business.

The true criterion as to fixtures to determine whether they are to be regarded as part of the realty or not, is not whether they may be detached and removed from the premises without injury to the freehold, although that, as is well understood, is oftentimes an important element in deciding the question. It is well established, that whether property, which is ordinarily treated as personal, becomes annexed to and goes with the realty as fixtures, or otherwise, must depend on the particular circumstances of the case. The question in this case is to be determined by the rules applicable to the question when it arises between mortgagor and mortgagee. The premises have been sold under execution in proceedings for foreclosure and sale of a mortgage put on the premises January 2d, 1869. They were purchased by the petitioners subject to a mortgage of $5000, besides interest. When the former mortgage was executed, all the fixtures were in place on the premises, with the exception of the upright boiler, about two thousand feet of pipe, and the shafting put in to run the embossing machines.

All of these fixtures were attached more or less firmly to the freehold. They were all put in for the business carried on, and which it was proposed to carry on there. It was intended that they should remain there. They were put there to fit the premises for the use, the manufacturing purposes, to which it was intended to put them. They were constantly used accordingly ; the greater part of them, from 1856 to the time, or about the time, of the sheriff's sale. The horizontal boilers were so bricked into the wall as to be undeniably part of the freehold. The upright boiler, which was afterwards added, was placed on a brick foundation built for it, running two feet below the surface of the ground, in which it was set and embedded in cement ; and it was connected with the horizontal boilers. The engine, in like manner, was set on a like platform, to which it was fastened by cement and by anchor bolts not less than four feet long. The steam

pumps were set on a like foundation with the engine, and were connected with the boiler by steam pipes.

The shafting referred to as being in the room near the boiler-house, was of iron. It rested upon a division wall between the engine room and the boiler-house, and was affixed and secured to that wall by wrought iron bolts.

The other shafting was held by hangers fastened to the roof beams. The steam pipes were connected with the boilers at both ends. It does not appear that any of these fixtures were put into the building to answer any merely temporary purpose. They were all put in by the owners of the premises from time to time, for use there. They constituted a considerable part of the value of the premises, for the purposes for which alone the premises were intended—factory purposes. The presumption arises from the relation in which these fixtures stand, having been thus put in by the owners, that they were intended to be permanent and not temporary. As was said by the court in *Crane* v. *Brigham*, 3 *Stockt.* 29, 35, as between mortgagor and mortgagee, when we have once established the facts, that a thing appertains to the real estate, is necessary for its enjoyment, and is *permanently* attached to the freehold, its character as a fixture resulting to the benefit of the mortgagee is determined.

As to the permanency, that does not depend so much upon the degree of physical force with which the thing is attached, as upon the motive and intention of the party in attaching it. If the article is attached for temporary use, with the intention of removing it, a mortgagee cannot interfere with its removal by the mortgagor; if it is placed there for the *permanent* improvement of the freehold, he may. See *Winslow* v. *Merchants Ins. Co.*, 4 *Metc.* 306; *Hunt* v. *Hunt*, 14 *Pick.* 374, 386; *Pierce* v. *George*, 108 *Mass.* 82; *Stockwell* v. *Campbell*, 39 *Conn.* 362.

In *Capen* v. *Peckham*, 35 *Conn.* 88, it was held that annexation to the freehold, the character of the annexation, the nature of the article annexed, its adaptation to the uses and purposes to which the building was appropriated at the time

the annexation was made, the relation of the party making it to the property to which it was annexed, that a permanent accession to the freehold was intended to be made, the greater value of the article in connection with the building than as a chattel to be removed, its ponderousness, the difficuty of removing it, its adaptation to the place it occupied and its want of adaptation to other places without special preparation therefor, would go far to show that the article was a fixture. In that case a windlass in a slaughter-house was held to be real estate, for the manner of its annexation indicated the intention of the party by whom the annexation was made that it should be so. The criterion is better stated, elsewhere, to be the united application of the following requisites : 1st. Actual annexation to the realty or something appurtenant thereto. 2d. Application to the use or purpose to which that part of the realty with which it is connected is appropriated. 3d. The intention of the party making the annexation, to make a permanent accession to the freehold.

In Stockwell v. Campbell, *supra,* it was held that a portable hot-air furnace, placed in the cellar of a dwelling-house to warm the house, and set in a pit prepared for it in the cellar, where it was held in place simply by its own weight, was a part of the realty ; and so also, as to the smoke pipe leading from the furnace to the chimney of the house. In that case the court say that the annexation need not be such as to require any actual disruption for its removal. The article may be attached to the building by mere adjustment of construction and putting in place, as in the case of doors and window-blinds, which are obviously parts of the building though attached only by hinges ; or it may be held in a place prepared to receive it by its mere size and weight.

In *Alvord Carriage Manufactory* v. *Gleason,* 36 *Conn.* 86, it was held that a factory bell hung in a tower built upon the factory to receive it, was a part of the realty.

In my judgment, all of the articles in controversy in this cause must be regarded, as between these litigants, under the circumstances of this case, as part of the realty.

Much stress is laid by the counsel of the receiver, on the fact that in the conveyance of the premises to the company by McLorinan and Haines, a bill of sale was, as appears from the above quoted clause in the deed, given for all these articles. The language of the clause indicates that the bill of sale was probably resorted to from the doubt in the mind of the conveyancer as to the character of the fixtures, as is evidenced by the fact that he was not satisfied to rest the conveyance of the fixtures on the bill of sale, but refers to those articles in the deed, with the declaration that they " go with the premises." Besides, the horizontal boilers, admitted to be part of the realty, were part of the articles mentioned in the bill of sale.

But the methods adopted by those parties in making that conveyance, or even their opinions in regard to the character of the property in dispute, can have no weight in this controversy, in which the question is as between mortgagor and mortgagee.

The motion to dissolve the injunction is denied, with costs.