SOLOMON D. McMILLAN, appellant,

and

JAMES D. FISH, THE NEW YORK WATER PROOF PAPER COMPANY and others, respondents.

1. The criteria to determine whether property is real or personal are, annexation, appropriation and intention to make a permanent accession to the freehold.

2. Where a mortgage is drawn and executed, which is intended to carry into execution a previous agreement, but which, by the mistake of the draughtsman, either as to law or fact, does not fulfill that intention, or violates it, equity will correct the mistake so as to conform to the intention between parties.

3. Where the scrivener, in drawing a mortgage on land from a corporation, made it to the mortgagee and his "successors," it was reformed to his "heirs."

McMillan *v.* N. Y. Water Proof Paper Co.

*Mr. Joseph C. Potts*, for appellant.

*Mr. G. Ackerson*, for respondents.

On appeal from the decree of the chancellor, reported in *Fish* v. *N. Y. Water Proof Paper Co.*, 2 *Stew.* 16.

SCUDDER, J.

The statement of facts in this case sufficiently appears in the opinion of the chancellor. The two mortgages given by The New York Water Proof Paper Company to the complainants below, as trustees, to secure the bondholders their bonds for $15,000, the amount advanced as a loan to the company to aid in establishing and prosecuting their business, were contemporaneous, and intended to effect the same purpose. One was distinctively a mortgage on the realty, describing the lands upon which the building and machinery were erected, by metes and bounds, without reference to the structures upon it. The second, for greater security, described only the machinery then in the mill.

It is manifest, from the evidence, that there was no intention to separate the machinery and fixtures for manufacturing in the mill from the realty, and treat them distinctively as chattels, but, in the abundance of caution, a chattel mortgage, in form, was given, in addition to the mortgage on the land, to secure the same debt, to the same creditors and at the same time.

This chattel mortgage was not refiled within the time required by statute (*Rev.* p. 709, § 41), hence McMillan, one of the bondholders, sued upon his bonds at law, obtained a judgment, and levied on all the machinery in the mill, to obtain, as he supposed, a first lien thereon.

A bill was filed by Fish and others, who were mortgagees and trustees for all the bondholders, to foreclose the mortgage on the real estate, and McMillan was enjoined by the decree of the chancellor from selling the machinery named in the chattel mortgage. The decree for foreclosure directs

that it be sold as part of the realty, to satisfy all the bond-holders secured by the mortgage on the real estate. The judgment creditor appeals from this decree, because it directs the sale of all the property mortgaged, as realty, whereas he claims that portions of it are personalty. The facts, however, show, as clearly appears in the opinion of the chancellor, that the machinery mentioned in the chattel mortgage, and claimed by the complainants in their petition for injunction, are permanent fixtures. They have all the qualities necessary to constitute them parts of the realty. These qualities have been so recently and fully considered in our courts that I need only refer to some of the later cases. *Quinby* v. *Manhattan Cloth Co.*, 9 *C. E. Gr.* 260 ; *Blancke* v. *Rogers*, 11 *C. E. Gr.* 563. At the last term of this court this subject received a most careful examination in the case of *Williamson* v. *N. J. Southern R. R. Co.*, 2 *Stew.* 311, wherein it was held that the rolling stock of a railroad com-pany was personal property.

The criteria to determine whether property is real or per-sonal are, annexation, appropriation and intention to make a permanent accession to the freehold. So completely do all the qualities co-exist in this case, that the mill was built and conformed in size and structure for this very machinery that was put in it, fastened to it, and, in part, imbedded in its walls and floors, so that a removal of any important part of the machinery would impair the building and prevent the very purpose of its erection. One of the witnesses, who was the first president and afterwards secretary of the com-pany, after describing the different pieces of machinery and their uses, says : "The whole concern, as it now stands, is adapted to the manufacture of water-proof paper; this machinery was placed in the mill as a permanent fixture; I never heard any intimation on the part of any director or stockholder to have the machinery removed." And, again : "The principal value of the property consists in its entirety, as it now exists there."

The chemical machine, or bath, was the novelty or principal patented machine used in the manufacture of the waterproof paper, and constituted the great estimated value of the enterprise. This was connected with the washer, and this, again, with rollers, either plain or embossed, by which the process was completed. The chemical apparatus and the washer could not be taken out of the building without destroying them, and all the articles named in the chattel mortgage are securely imbedded or fastened to the realty, or so attached that they cannot be separated without great prejudice to the parts taken and those that would remain. It is of no consequence, therefore, that the chattel mortgage was not refiled, for all the machinery named therein was covered by the mortgage on the land.

The judgment of McMillan was obtained subsequent to the registry of the mortgages, and there is no error in the decree which postpones his lien to the prior lien of the mortgages on the property therein described.

The decree also reforms the mortgage by substituting the word "heirs" for "successors." To this, objection is made on this appeal. The deed for the land was made to the corporation in the usual form, to have and to hold to them, "their successors and assigns." This deed was delivered to the attorney, to draw a mortgage in ample and complete form to secure the bondholders for their advances to the company. This was the only instruction given him for its preparation. By mere mistake and inadvertence he drew the mortgage conveying the land to James D. Fish and Charles H. P. Babcock, as trustees, and to their successors. By copying from the deed to the corporation, the scrivener made the mistake by which the judgment creditor now contends that only an estate for life was given to these trustees.

It does not appear in the proofs, nor in the answer of McMillan, who was one of the directors and a bondholder, that, at the time the mortgage was given, either he or any of the officers or bondholders understood that any other

estate than a fee-simple was conveyed by mortgage to secure the bonds of the company. The use of the word "successors," taken from the deed of the company, shows that something more was intended than a life estate, and that the purpose was to convey all the estate which the corporation had in the lands. The mortgage was not technically drawn to express the intent, but there is no difficulty in reforming the instrument to conform to the intention of the parties, as it is apparent on the face of the deed, supported by the parol proof of the agreement and understanding of the parties.

This case, upon the facts, avoids the difficulty considered in *Wheeler* v. *Kirtland,* 8 *C. E. Gr.* 13, 9 *C. E. Gr.* 552, where such reformation of the deed would prejudice a subsequent judgment creditor; for here McMillan was a director in the company when the mortgage was given, a bondholder to be secured by the mortgage, and a participant in the arrangement by which the security was given. It is within the rule recognized in *Wintermute* v. *Snyder,* 2 *Gr. Ch.* 500, that, where an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which, by the mistake of the draughtsman, either as to law or fact, does not fulfill that intention, or violates it, equity will correct the mistake so as to produce a conformity to the intention. This is unobjectionable between parties to the deed and those who have knowledge of its purpose and intention before its execution. A court of equity will give effect to the deed in such a case, so as to carry out the intention of the parties. *Huyler* v. *Atwood,* 11 *C. E. Gr.* 504; *Sisson* v. *Donnelly,* 7 *Vr.* 432.

These questions which have been considered, cover and settle the direct points of the appeal, and we have not gone outside of them to decide other matters presented in the arguments of counsel or in the opinion of the court below. For the reasons above given, the decree should be affirmed.

*Decree unanimously affirmed.*