THE ATLANTIC SAFE DEPOSIT AND TRUST COMPANY

*v.*

THE ATLANTIC CITY LAUNDRY COMPANY et al.

[Filed November 5th, 1902.]

1. To transmute chattels into realty, it must appear—*first*, that the chattels were actually annexed to the real estate, or something appurtenant thereto ; *second*, that they were applied to the use to which that part of the realty to which they were connected was appropriated ; *third*, that they were annexed with the intention to make a permanent accession to the freehold.

2. Office furniture, safes, tables, chairs, clocks, desks, small clothes-press, soap kettle, &c., found in a laundry plant, and none of which was

in any way attached to the building, constitute personal and not real estate.

3. A mortgage executed by a laundry company, after describing the lands mortgaged, continued: "And all personal and mixed estate, * * * and also all machinery, boilers, engines and fixtures of every description." The machinery included an engine, boiler and shafting, the engine being bolted to a stone, brick or cement foundation; ironing machines made of steel rollers, connected above to the shafting by a pulley and belt and connected underneath, as well as from above, with the boiler by steam pipes; an "annihilator," fastened by lag screws and connected with the boiler and with the shafting; washing machines bolted to the floor and connected with the shafting by pulley and belt; and other laundry machinery similarly attached.—*Held*, to be part of the real estate and covered by the mortgage, though it was recorded only as a real and not as a chattel mortgage.

On bill to foreclose a real estate mortgage and cross-bill to foreclose a chattel mortgage.

The real estate mortgage was executed on December 1st, 1899, by the Atlantic City Laundry Company to the Atlantic Safe Deposit and Trust Company. It covered a tract of land, with the buildings thereon, at Atlantic City. It was made to the Atlantic Safe Deposit and Trust Company, in trust for all persons who should at any time be the owner of bonds of the Atlantic City Laundry Company, to secure the payment of which bonds the mortgage was given.

It is admitted that $35,000 of bonds are outstanding, and that upon $22,200 of them interest is due from December 1st, 1901, and upon $12,800 of them the interest is due from September 21st, 1901.

On September 23d, 1901, the Atlantic City Laundry Company executed another mortgage, upon the same premises, to Margaret Paul Irvin, to secure $2,000. The contest in the cause is between these mortgagees, respecting the character of the machinery in the building standing upon the said premises used by the laundry company in its business. The complainant insists that all the machinery are fixtures, and are covered by its mortgage. Mrs. Irvin contends that they are personalty, unencumbered by the mortgage to the Atlantic Safe Deposit and Trust Company, but covered by her mortgage.

The first-named instrument, while including personal property, was recorded as a real estate mortgage and not registered as a chattel mortgage. The second mortgage, while including the land described in the first mortgage (with other land), also included the machinery therein contained and all the goods and chattels or personal property, of any kind or character then upon the said premises, belonging to the mortgagor. This mortgage was recorded as a chattel, as well as a real estate, mortgage.

In addition to these two mortgagees, another party appears in the contest. This party is the receiver of the Atlantic City Laundry Company, appointed by this court on insolvency proceedings taken against that company. The receiver has answered, setting up that all the machinery, excepting the engines and boilers, are personalty; and further, insisting that a part of this machinery was in the possession of the laundry company under a conditional sale or lease, made to it by the Adams Laundry Machinery Company, from which it was purchased, and that an action to replevy such portion of the machinery is now pending against the laundry company.

*Messrs. Thompson & Cole,* for the complainant.

*Mr. William M. Clevenger,* for the receiver.

*Mr. Harrison H. Voorhees,* for the defendant Margaret Paul Irvin.

REED, V. C.

The main question, it is perceived from the foregoing statement, concerns the real or personal character of the machinery in the laundry plant. This machinery consists of the following articles:

Engine, boiler and shafting. The engine is bolted to a stone, brick or cement foundation.

Ironing machines, made of steel rollers, connected above to the shafting by a pulley and belt, and connected underneath, as well as from above, with the boiler by steam pipes. It is a heavy ma-

chine, and stands in position by its own weight, and was taken into the building in sections.

An "annihilator," fastened on a base and to the floor by lag screws, and connected with the boiler by a two-inch steam pipe, and with the shafting by belt and pulley.

Tumblers, a small machine, screwed to the floor, and connected with the shafting by pulley and belt.

Washing machines, made of wood and iron, bolted to the floor, and fastened to a pipe, which feeds them with water, and connected with the shafting by pulley and belt.

Watkins injectors, about three feet in dimensions, made of iron and copper, fastened to the building by being riveted to the floor, and connected with the shaft by belt and pulley.

Snyder drying machine, about eighteen feet long, made of wood, lined with galvanized iron, with coils of pipe running along the side. It is nailed and bolted to the floor, and connected with the boiler by a large pipe, and with the shafting by pulley and belt.

Small clothes-press, made of iron and wood, not fastened to the floor.

Collar and cuff ironer—"Sharp's Monarch"—made of wood and iron, bolted to the floor, and connected in the usual way with the shaft.

Steam table and appliances, nailed to the floor.

Hand ironing tables, with little stoves in them, nailed to the floor.

Ironers, starch machines and starch kettles, bolted to the floor, and connected with the shaft by belt and pulley.

"Columbia Washers," bolted to the floor, and connected with the shaft by belt and pulley.

Soap kettle, standing upon the floor.

Clock, safe, desk, chairs and tables and office furniture—disconnected from the building.

The tests to be applied, in ascertaining whether any or all of the mentioned articles became a part of the realty, have been repeatedly stated by the court of appeals. *Feder* v. *Van Winkle, Receiver, 8 Dick. Ch. Rep. 370, 372,* and cases cited in the opinion of Mr. Justice Van Syckel. To transmute a chattel

into realty, it must appear—*first,* that the chattels were actually annexed to the real estate, or something appurtenant thereto; *second,* that they were applied to the use or purpose to which that part of the realty with which they were connected was appropriated; *third,* that they were annexed with the intention to make a permanent accession to the freehold.

In respect to the first test, it is clear that the office furniture, safe, tables, chairs, clocks, desks, small clothes-press, soap kettle, none of which were in any way attached to the building, are still personalty. All the remaining machinery are in some way fastened to the floor, excepting the ironing machines, which are not. They, however, are connected with the boiler by steam pipes and with the shafting by belts.

To answer the first test, the degree of annexation is not important. As to the permanency, that does not depend so much upon the degree of physical force with which the things are attached, as upon the motive and intention of the party attaching them. *Quinby* v. *Manhattan Cloth and Paper Co., 9 C. E. Gr. 260, 264.* While the degree of stability and apparent permanence of the annexation may be important in considering the remaining tests, the annexation is here sufficient to answer the first test, regarded by itself. So, also, do the annexed articles respond favorably to the complaint in respect to the second test. It is true that the machinery was such as is used in other laundries, and that it was not made for, or specially adapted to, this building. But, in the language of Mr. Justice Van Syckel, in *Feder* v. *Van Winkle, 8 Dick. Ch. Rep. 370,* neither is the fact that the thing in question may be removed and sold for other uses, nor that they were not made for special adaptation to the building in which they are placed, decisive of their character. Those facts are mere circumstances to be considered, and the mere presence of them does not necessarily withdraw machinery from the real estate mortgage.

In the present case there is a building erected for the prosecution of a particular business, with machinery bought and kept in position in the building for executing the purpose of the business to which the building was devoted. I can hardly con-

ceive of a stronger instance of the application of a chattel to the use to which the realty was appropriated.

Then, thirdly, were they annexed with the intention to make them a permanent accession to the building?

It is not necessary that there be an intention to make the annexation perpetual. *Feder* v. *Van Winkle, supra.* It is sufficient if they are attached, with the intention that they shall remain there until they are worn out in business. *Speiden* v. *Parker, Trustee, 1 Dick. Ch. Rep. 292, 293.*

At the same time there must be an intention that the machine shall remain in the place where it is put, to be there used as a part of the business conducted in the building. If the machines are to be used in whatever part of the building it may, from time to time, be convenient to employ them, then, to use the language of Mr. Justice Knapp, in *Blancke* v. *Rogers, 11 C. E. Gr. 563, 568,* they are mere implements—heavy and complicated tools.

The intention in the present case must be gathered from the manner of annexation, from the purpose and methods of use, and from any verbal or written expression of intention. The mortgage itself expressly includes machinery. The mortgage, after describing the land mortgaged, has the following clause:

"And all personal and mixed estate of which the said party of the first part is seized or possessed, and also all machinery, boilers, engines and fixtures of every description."

This clause seems to disconnect the personal property from the machinery. It also rather seems to include machinery as fixtures. This inference is not so strong as it would have been had the word "fixtures" been preceded by the word "other," but, nevertheless, a distinction between the personal and fixed property is clearly drawn; and the association of the word "machinery" with boilers, engines and fixtures leads strongly to the conclusion that the machinery was regarded as an accession to the realty.

In respect to the intention to be gathered from the manner of annexation and use, it is to be observed that while many,

10

perhaps most, of the machines can be moved from one place to another in the building, there is no evidence that any have been so moved. This is evidential of an intention to make the position in which they were originally placed their permanent station. Then, again, many of the machines are connected, not merely with the building by lag screws, or nails, or by bolts running to the pulleys upon the shafting, but they are connected with the boiler by steam pipes. Now, a removable belt is not regarded as a permanent annexation, for it can be used upon one pulley as well as upon another in any part of the building. But a steam pipe, attached by plumbing to a boiler, is of a much more permanent character, and resembles the connection with a shaft by cog wheels or other similar apparatus. In these respects the present case differs from *Knickerbocker Trust Co.* v. *Penn Cordage Co., 17 Dick. Ch. Rep. 624.*

Applying the tests named to the facts as I find them, my conclusion is as follows:

The engine, boiler and shafting are realty. So, also, are the ironing machines, attached to the boiler by pipes, which run through holes cut in the floor. So, also, is the "annihilator," attached in the same way. So, also, are the washing machines, riveted to the floor and connected with the water pipe. So, also, are the drying machines, bolted to the floor and connected with the floor by pipes. So, also, the Watkins and other extractors, which are riveted through the floor. So, also, the "Sharp Monarch" collar and cuff ironer, which is bolted to the floor. So, also, the starcher and starch machines, which are bolted to the floor; and so, also, the "Columbia Washers," also bolted to the floor.

As already remarked, those articles unattached remain personalty, and those articles which are merely nailed or simply connected by a belt with the shafting are to be regarded as personalty. This conclusion, I think, sufficiently separates the two classes.

The decree on the first mortgage will cover, of course, the one, and the decree on the second mortgage the other.

In respect to the matter raised by the answer of the receiver, I can say nothing. If it be true that the title to a portion of the articles now in the building is not in the Atlantic City Laundry Company, but is in the Adams Laundry Machinery Company, no title can pass to a purchaser under the mortgage sales. The Adams Laundry Machinery Company, not being a party to this suit, its rights are not in issue, and cannot be determined.

A decree will be signed upon notice to the respective solicitors.