*4 Buch.* Falaenau *v.* Reliance Steel Co.

ARTHUR FALAENAU

*v.*

RELIANCE STEEL FOUNDRY COMPANY.

[Decided April 25th, 1908.]

1. A seller wrote to a buyer, offering to sell machinery for a specified price, terms half cash, balance within a specified time, machinery to remain the seller's property "until fully paid for." The buyer accepted the offer and ordered machinery, which was furnished.—*Held*, a conditional sale, and that the title remained in the seller until the price was fully paid.

2. Under *P. L. 1898 p. 670*, providing that conditional sales are void as against judgment creditors and subsequent purchasers and mortgagees in good faith, unless the conditions of the sale shall be expressed in a writing which has been recorded, a receiver of an insolvent cannot, as such. in the absence of judgment creditors of the insolvent, attack a conditional sale to the insolvent, though the conditions were not expressed in writing and recorded.

3. A seller sold a machine on condition that the title should remain in him until the price was paid. The machine was delivered, and was set up on a foundation, and was put in actual operation as a part of the plant of the buyer, who, without paying the price, mortgaged his real estate.—*Held*, that the mortgagee could not claim the machine, though the conditions of the sale were not expressed in writing and recorded, since he could only hold property which belonged to the buyer and became affixed permanently to the realty.

4. A domestic corporation having an office in a sister state sent letters from its office there to a foreign corporation there relating to the purchase of machinery from the foreign corporation. The last letter written by the domestic corporation in reference to the matter was written in New Jersey to the foreign corporation at its office in the sister state. The correspondence resulted in a contract whereby the foreign corporation sold machinery to the domestic corporation.—*Held*, that the contract was not made in New Jersey, so as to preclude the foreign corporation from recovering it on the ground that it was doing business in the state without complying with the laws as to foreign corporations.

5. The court of chancery has jurisdiction over the subject-matter of a controversy involving the right of a seller to resume possession of goods conditionally sold and delivered to a buyer becoming insolvent without having paid for the goods, as against the objection that there was an adequate remedy at law.

On petition and answers.

*Mr. Sherrerd Depue,* for the petitioner.

*Mr. Michael Dunn,* for Cooke et al., mortgagees.

*Mr. James P. Northrup,* for the receiver.

HOWELL, V. C.

The litigation now before the court arises out of the insolvency of the Reliance Steel Foundry Company, which company in 1907 made a contract for the purchase of a piece of machinery called a sand grinding machine, from Phillips & McLaren Company, of Pittsburgh, Pennsylvania. The machine was delivered to the Reliance foundry, and at the time of its insolvency was set up on a foundation and had been in actual operation as a part of the plant of the company. The Phillips & McLaren Company, the vendors of the machine, have filed a petition claiming that the machine was sold conditionally, and that inasmuch as the condition was never performed, the machine still belongs to them, and they pray that they may have leave to resume possession of it as of their own property.

The first question to be decided is whether the sale of the machine by the petitioner to the Reliance company was an absolute or a conditional sale. The contract arises out of correspondence only. The first letter is written by the petitioners to the vice-president of the Reliance company, the petitioners then being in Pittsburgh, but having an office in Philadelphia, and the vice-president having an office in Philadelphia. By this letter the petitioners make a tender of a contract to furnish a machine of the general character of the one in controversy for either $900 or $985, depending upon the details of the machine. The terms of credit were set out as follows: "Terms one-half cash against B/L balance thirty days, machinery to remain our property until fully paid for." The vice-president of the Reliance company replied to this letter under date of August 10th. That reply was written from Philadelphia, and was addressed to the petitioners at Philadelphia, at their branch office. By this letter the

Reliance company accepted the tender of the petitioners in the following words: "Kindly enter our order for one seven-foot diameter stationary bottom self-discharging sand pan, same to be in full accordance with your proposal dated June 5th, 1907, to the writer, at a price of $985. F. O. B. cars Pittsburgh, Pa.," &c.

On August 13th, the Reliance company from its Philadelphia office again wrote to the petitioners, addressing the same to their Philadelphia office, changing the diameter and the weight of the rolls and the price of the machine, and this was followed on September 3d by a formal order printed by a typewriter on a blank specially prepared for ordering machinery. This order was dated at Delawanna, New Jersey, and was addressed to the petitioners at Philadelphia, and contains these words: "This order confirms our letter order of August 10th, 1907. Do not duplicate." This order contains also this very significant statement: "Kindly furnish us with the following material, same to be in full accordance with your proposal of June 6th, 1907."

I take it that all this correspondence must be read together in order to ascertain what was the contract under which the machine in question was delivered, and I conclude, after a careful examination, that the contract was this: That Phillips & McLaren, the petitioners, would furnish the machine in question for a certain price; that it should be delivered to the Reliance company, on the cars at Pittsburgh, Pennsylvania, and that the title should remain in the vendor until the machine was fully paid for.

It appears by the testimony that in due course of time the machine in question was delivered at the works of the insolvent corporation at Delawanna, but that this corporation never made any payment of any amount on account of the purchase price.

I therefore conclude that as between the petitioner and the corporation the transaction in question was a conditional sale, and that it can be enforced by the petitioner by proper proceedings and the machinery be recovered by it, unless the rights of other persons shall have intervened.

Answers are filed to the petition by the receiver, and by Cooke and others, trustees, who hold a mortgage on the premises. By

their answer the mortgagees claim that there was no conditional sale as between the petitioner and the corporation; that the machine was affixed permanently to the freehold and became, therefore, in law a fixture and subject to the lien of their mortgage. They claim further that inasmuch as the petitioner is a foreign corporation, and has not obtained a license to transact business in this state, it has no authority to take the pending proceeding for the recovery of the machine, even though they are the owners of it.

The law in relation to conditional sales is found in sections 71, 72, 73 and 21 of the "Act respecting conveyances" (*P. L. 1898 p. 670*). It does not vary, except possibly in mere verbiage from the acts of 1889 (*p. 421*), and 1895 (*p. 302*), which were repealed by chapter 233 of the laws of 1898. By the provisions of the law now in force conditional sales are absolutely void as to judgment creditors and subsequent purchasers and mortgagees in good faith in every case in which the sale shall be accompanied by an actual delivery and followed by an actual and continued change of possession, unless the conditions of the sale shall be expressed in a writing, which must be recorded as by the statute is prescribed. This statute in its former shape (*P. L. 1889 p. 421,* and *P. L. 1895 p. 302*) came before Vice-Chancellor Pitney for construction in the case of *General Electric Co.* v. *Transit Equipment Co., 57 N. J. Eq.* (*12 Dick.*) *460 (1898)*. It was there held by him that under the strict reading of the statute the only persons who were meant to be protected were the classes of persons described in the act, namely, "Judgment creditors not having notice thereof and subsequent purchasers and mortgagees in good faith not having notice thereof."

Neither the receiver who submits his rights to the judgment of the court, nor the real estate mortgagees who make actual claim to the machine in question, can be said to occupy the place of either judgment creditors or subsequent purchasers or mortgagees in good faith and without notice. It is true that the receiver takes title on behalf of creditors, and that he is entitled to pursue any of the remedies which creditors would be entitled to pursue on their own account if no receiver had been appointed.

He gets his rights through the rights of creditors. The petition alleges that there are no judgment creditors, and there is no evidence that there are any. Hence, it is quite apparent that the receiver is not in a position to attack the conditional sale as representing judgment creditors. He certainly cannot attack it as representing general creditors. I must therefore say that the receiver as such can maintain no claim as against the force of the conditional sale of the machine in question. Neither can the mortgagee hold any lien upon the subject-matter of the conditional sale. The mortgagee can only hold property which belonged to the mortgagor and became affixed permanently to the realty. If, therefore, the conditional sale retained the title in the so-called vendor the title never reached the vendee, and hence the vendee was never in a position to confer a lien upon the property in favor of the mortgagee. And this disposes of the claim of lien in favor of the mortgagee.

The mortgagee next claims that the petitioner, being a foreign corporation, and without a license to transact business in New Jersey, may not take any proceeding for the recovery of the property in question. Without attempting to decide that this proceeding is an "action" within the meaning of the ninety-eighth section of the Corporation act of 1896, but conceding for the purpose of the argument that it is such, still I do not think that the contract in question is a contract made by the insolvent corporation in this state. The three first letters were written by the insolvent corporation to the petitioner in Philadelphia, each having its office there. The last one, that of September 3d, was written from Delawanna, in Passaic county, to the petitioner at Philadelphia, and the natural inference would be that it was sent by mail from Delawanna to Philadelphia or Pittsburgh, and received by the petitioners at one of those places. Under the authorities, such a contract is not a contract made in New Jersey. *Faxon Company* v. *Lovett Company, 60 N. J. Law (31 Vr.) 128; Delaware and Hudson Canal* v. *Mahlenbrock, 63 N. J. Law (34 Vr.) 281. Wolf* v. *Lancaster, 70 N. J. Law (41 Vr.) 201,* cited by counsel for the mortgagee, does not apply. It is there assumed, and probably appears by the record, that the contract in question was a contract made in New Jersey.

I have given counsel my views of the whole case for the reason that the whole case was submitted without reservation.

The answer of the mortgagees raises the question of the jurisdiction of the court to deal with the question at all, upon the ground that there is an adequate remedy at law. I have no doubt about the jurisdiction of this court over the subject-matter of the controversy, and should not hesitate to advise a decree as against that objection. A possibly more serious question, viz., whether this court has properly acquired jurisdiction over the persons of the mortgagees, is not raised by the answer, nor was it discussed on the argument. I will give counsel an opportunity, if they so desire, to argue this question before any order shall be made.