The bill is to foreclose two mortgages, first, a real estate mortgage in the sum of $250,000, and second, a chattel mortgage in the same amount given as additional security for *Page 569 
the mortgage on the realty. The property, consisting of a hotel and its equipment and furnishings, is in the custody of an insolvency receiver appointed by this court in Sparks v. LaReine Hotel Corporation, docket 76 p. 135. Numerous conditional vendor defendants filed petitions in that cause for the removal of property the subject of conditional sales agreements and in the custody of the receiver. The mortgagee in the foreclosure suit also claimed this property to be subject to both the real and chattel mortgages. There was a reference to a master who viewed the premises and took testimony on the various issues referred. It was agreed that the decision in this suit should be dispositive of the issues raised by the petitions in the other. The master reported that the chattel mortgage was invalid for the reasons set forth in conclusions which he filed. No exceptions to that finding have been filed; the court concurs and it will be confirmed.
(Since the foregoing was written, exceptions to that finding have been filed by the complainant but they will be dismissed for the reasons stated by the master in his conclusions which have been filed.)
The master also filed a report fixing the amount due on the real estate mortgage and to the various defendants on their respective encumbrances and conditional sales agreements. With respect to the subject-matter of the conditional sales agreements, there was a stipulation by the parties as to some of it which was removed. As to certain property claimed by Credit Utility Company, Incorporated, York Ice Machinery Corporation, Eastern New Jersey Power Company, Standard Weather Strip and Screen Company, Incorporated, Jacob Josef Kohn and Mundis, Incorporated, B. Altman Company and Otis Elevator Company, the master first reported that the property in controversy could be removed from the premises without material injury to the freehold and that it was not subject to the lien of the complainant's mortgage. This was immediately before the decision in FutureBuilding and Loan Association v. Mazzocchi, 107 N.J. Eq. 422.
Upon the filing of the opinion in that *Page 570 
cause, the master, by leave of court, withdrew his report, and later filed another report in which he found that the property of B. Altman Company, consisting of furniture, rugs and hangings, was not attached to the freehold so as to become a part thereof and was removable without material injury thereto. He also reported that the property claimed by Credit Utility Company, Incorporated, York Ice Machinery Corporation, Standard Weather Strip and Screen Company, Incorporated, Jacob Josef Kohn and Mundis, Incorporated, and Otis Elevator Company, were "a necessary part of the premises and that the same cannot be removed without material injury to the hotel building and the institution of which they form a part," and that they were subject to the lien of complainants' mortgage.
With respect to the claim of Eastern New Jersey Power Company the master reported that a portion of the property claimed could be removed without material injury to the premises and was not subject to the lien of complainants' mortgage; but that other portions of the property, namely, two electric transformers, were necessary to the operation of the defendant's building as a hotel and that "they could not be removed without material injury to the institution of which they are a part." No exceptions to the master's findings with respect to the property claimed by this defendant, other than the transformers, have been filed, and the report, save as excepted to, will be confirmed.
The complainant has excepted to the master's report as to property claimed by the defendant B. Altman Company. These furnishings clearly never lost their character of personal property. They are in no way attached to the freehold so as to become a part thereof and the chattel mortgage being invalid, the exception with respect to this finding will be overruled.
After the decision in Future Building and Loan Association v.Mazzocchi, supra, the master felt impelled to follow his interpretation of it and bases his present report, with respect to which exceptions have been filed, upon the rule of that case as he conceived it. In this he was correct, but *Page 571 
I think he misinterpreted the court's opinion and that his present findings cannot be wholly sustained.
The variant views of counsel respecting the law applicable to the present controversy, reflecting, as I believe they do, confusion at the bar and some difference of opinion on the bench, have impelled me to trace the history and development of the law of fixtures in this state and the present law of conditional sales, which, in my judgment, is an outgrowth of the law of fixtures. It may be said at the outset that the issues here are controlled by the law of conditional sales and not by the law of fixtures, although some understanding of the latter must be had in order to correctly apply the former.
The ancient English rule was that all things annexed to the realty become a part of it and annexation was considered the test. The underlying principle of the law of fixtures "being but one application of the theory of accession, as it existed in the civil law" (1 Tiff. Real Prop. § 266; see, also, 1 Thom.Real Prop. § 138; Broom Max. (9th ed.) 264), the degree of annexation was unimportant. This rule was greatly relaxed by modern decisions, and the degree of annexation and the resultant injury to the freehold by detachment became of increasing importance. Broom Max., supra. The maxim of the common law is that the principal thing should not be destroyed by taking away the accessory. 1 Thom. Real Prop. § 143. In New Jersey as early as 1854 (Brearley v. Cox, 24 N.J. Law 287) it was held that "the true criterion of a fixture is the united application of the following requisites: 1, actual annexation to the realty, or something appurtenant thereto; 2, application to the use or purpose to which that part of the realty with which it is connected is appropriated; 3, the intention of the party making the annexation to make a permanent accession to the freehold," but that the question might be controlled by the agreement of the parties. In Crane v. Brigham (1855), 11 N.J. Eq. 29, it was held that as between mortgagor and mortgagee, if the thing appertains to real estate, is necessary for its enjoyment and is permanently attached to the freehold, *Page 572 
it is a fixture resulting to the benefit of the mortgagee, and that the degree of physical force with which the thing is attached is not so important as the motive of the party attaching it. But the rule was differently applied as between landlord and tenant, heir and executor, grantor and grantee, and mortgagor and mortgagee. Later cases in the court of errors and appeals (Quinby v. Manhattan Cloth and Paper Co. (1873), 24 N.J. Eq. 260; Blancke v. Rogers Co. (1875), 26 N.J. Eq. 563;McMillan v. Fish (1878), 29 N.J. Eq. 610; Williamson v.New Jersey Southern Railroad Co. (1878), 29 N.J. Eq. 311;Penn Mutual Life Insurance Co. v. Semple (1884), 38 N.J. Eq. 314; Speiden v. Parker (1889), 46 N.J. Eq. 292), restated the rule of Brearley v. Cox, supra, and stressed the importance of annexation; but in Feder v. Van Winkle (Courtof Errors and Appeals, 1895), 53 N.J. Eq. 370, a "more comprehensive view of the subject" was taken and "controlling weight to the object for which, rather than to the method by which, the annexation was made," was given; and in KnickerbockerTrust Co. v. Penn Cordage Co. (1903), 66 N.J. Eq. 305 (atp. 308), Chief-Justice Gummere said that in the earlier cases the decision "seems to have been rested very largely upon the method adopted in making the annexation and but little consideration given to the relation which the machine bore to the building in which it was located, or to the other machinery in conjunction with which it was used." See, also, General ElectricCo. v. Transit Equipment Co. (1898), 57 N.J. Eq. 460; TheAtlantic Safe Deposit and Trust Co. v. The Atlantic CityLaundry Co. (1902), 64 N.J. Eq. 140; Cunningham v. SeaboardRealty Co. (1904), 67 N.J. Eq. 210; Security Trust Co. v.Temple Co. (1904), 67 N.J. Eq. 514; Falaenau v. RelianceSteel Foundry Co. (1908), 74 N.J. Eq. 325; Leo Co. v.Jersey City Bill Posting Co. (1909), 78 N.J. Law 150; OilCity Boiler Works v. New Jersey Water and Light Co. (Court ofErrors and Appeals, 1910), 81 N.J. Law 491. In Security TrustCo. v. Temple Co., supra, Vice-Chancellor Bergen said that the question "whether a chattel has become a part of the freehold so as to pass with it under a conveyance *Page 573 
thereof containing only a description of the land, has been a fruitful source of judicial discussion and determination, with results so various in different jurisdictions as to render hopeless any attempt to reconcile them." But generally speaking, of the three requisites above named, the intention of the party making the annexation was considered of paramount importance and the other two valuable only as evidence of that intention. 1Thomp. Real Prop. §§ 137, 144; and that this was also true with respect to the problem in this state is shown by a careful reading of the cases above cited. The confusion in different jurisdictions resulted from the importance attributed in them respectively, to the first and second characteristics of a fixture as laid down in Brearley v. Cox. In some jurisdictions the degree of annexation was considered as controlling in determining the intention with which the chattel was annexed, and in others, notably our own, as decisions beginning with Feder v. Van Winkle, supra, will show, the use to which the chattel was appropriated was the controlling factor. In Chancellor v. Cruse (1914), 83 N.J. Eq. 232,
Vice-Chancellor Backes again referred to the three requisites mentioned in Brearley v. Cox, and stated that the chattels there in question "were removable without injury to the real estate, but this circumstance is of little moment. They wereintegral parts of a common plant, and with the building formed aunit for the prosecution of a common purpose. Undoubtedly, they were intended by the mortgagor to remain indefinitely, and were designed by him to be, not a temporary, but a permanent accession to the freehold." (Italics mine.) Prior to the enactment of our Uniform Conditional Sales act, the test determining the character of a chattel annexed to the soil was the intention of the parties, and the use to which the chattel was appropriated was considered as controlling evidence of that intention, in the absence of any agreement between the parties. All of the cases above cited arose prior to the adoption of our Uniform Conditional Sales act.
At common law a vendor of personal property could retain title thereto until the purchase price was paid, notwithstanding *Page 574 
delivery to the vendee and without notice to anyone (Campbell
v. Roddy (1888), 44 N.J. Eq. 244; General Electric Co. v.Transit Equipment Co., supra; Cole v. Berry, 42 N.J. Law 308;Thayer Mercantile Co., Inc., v. First National Bank ofMilltown, 98 N.J. Law 29; affirmed, 98 N.J. Law 907; Lifschitz
v. Vorclone Corp., 8 N.J. Mis. R. 83; 148 Atl. Rep. 899; DetroitSteel Cooperage Co. v. Sisterville Brewing Co., 233 U.S. 712); and originally it was not even necessary that the agreement for retention of title be in writing. Elliott, New Jersey Law ofSales 765, 772. This common law right of the vendor to retain title until the chattel was paid for was restricted by statute in this state requiring record notice for the protection of judgment creditors and subsequent purchasers and mortgagees. P.L. 1889 p.421; P.L. 1895 p. 302; P.L. 1898 p. 670 §§ 21, 71, 72, 73;Cooper v. Philadelphia Worsted Co., 68 N.J. Eq. 622, 630. This legislation was not intended for the protection of prior mortgagees. General Electric Co. v. Transit Equipment Co. andFalaenau v. Reliance Steel Co, supra. The rule had previously been laid down that where a mortgage covered after-acquired property, or for any other reason entitled the mortgagee to claim a lien upon the chattels subsequently annexed to the freehold, that lien attached only to the interest which the mortgagor acquired. Campbell v. Roddy, supra; Falaenau v. RelianceSteel Co., supra. Our Uniform Conditional Sales act was adopted in 1919. P.L. 1919 p. 461. Section 7 of that act provides:
"(1) If the goods are so affixed to realty, at the time of a conditional sale or subsequently as to become a part thereof, and not to be severable wholly or in any portion without material injury to the freehold, the reservation of property as to any portion not so severable shall be void after the goods are so affixed, as against any person who has not expressly assented to the reservation.
"(2) If the goods are so affixed to realty at the time of a conditional sale or subsequently, as to become part thereof, but to be severable without material injury to the freehold, the reservation of property shall be void after the goods are so affixed as against subsequent purchasers of the realty for value and without notice of the conditional seller's title, unless the conditional sale contract, or a copy thereof, together with a statement signed by the seller briefly *Page 575 
describing the realty and stating that the goods are or are to be affixed thereto, shall be filed before such purchase in the office where a deed of realty would be recorded or registered to affect such realty.
"(3) As against the owner of realty the reservation of the property in goods by a conditional seller shall be void when such goods are to be so affixed to the realty as to become part thereof, but to be severable without material injury to the freehold, unless the conditional sale contract, or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are to be affixed thereto, shall be filed before they are affixed, in the office where a deed would be recorded or registered to affect such realty."
It is to be noted that while earlier legislation recognized conditional sales, it did not change the basic law of fixtures or alter its application to controversies arising with respect to the chattel conditionally sold, except that the rights as against third parties (judgment creditors, subsequent purchasers and mortgagees) were made to depend upon notice, through the recording systems. The right of the immediate parties to control the question as between themselves by agreement, remained as theretofore. Bearing in mind that the common law stressed the importance of annexation and its degree, that the early New Jersey cases were to the same effect, and that later New Jersey cases stressed the use to which the chattel was appropriated, instead of the degree of annexation, as indicative of the intention of the parties where the question of whether or not a chattel had become a part of realty was concerned, it will be seen that the Conditional Sales act of 1919 marked a radical change in the law applicable to conditional sales contracts. Previously such contracts had been controlled, except as to the statutory requirement of notice, by the law of fixtures. But now, the rights of the vendor, vendee and third parties are controlled by the act itself and the question of annexation and its degree, which in the development of the law of fixtures had been relegated to positions of minor importance, again becomes the controlling factor. In General Motors Acceptance Corp. v.Smith (Court of Errors and Appeals, 1924),101 N.J. Law 154. Mr. Justice Katzenbach, referring to the Conditional Sales act, said: "This act stands by itself. It is *Page 576 
not to be read with or to have grafted upon it the act relating to the purchase and sale of motor vehicles." Nor, in my judgment, is the law of fixtures, as previously written in this state, to be read into or grafted upon this act. The act stands alone and by its provisions all transactions coming within its purview stand or fall. The basic law of fixtures is not changed by the act. Outside of conditional sales transactions that law and its application remain the same, but it no longer has any application to such agreements, except as it may be useful in determining what is or is not material injury to the freehold. When this act was adopted it was undoubtedly intended that it, and not the law of fixtures as previously evolved, should apply to transactions within its scope. Neither the question of the intention with which a chattel is annexed to the realty, that question being eliminated by the agreement itself, nor the use to which the chattel is to be appropriated, is any longer controlling. "Material injury in detaching, not intention in attaching, is the test." Future Building and Loan Association v. Mazzocchi,supra. And the degree of annexation has an important bearing on that test.
We have seen that as between the parties to a conditional sale, an agreement retaining title in the vendor is controlling; but this rule is subject to the proviso that the chattel is not so closely incorporated into the realty as substantially to lose its identity, or to be incapable of removal without substantial injury to the freehold or to the article itself. 1 Tiff. RealProp. § 271; 1 Thomp. Real Prop. §§ 143, 156, 157, 187; Ford
v. Cobb, 20 N.Y. 344; In re Seward Dredging Co.,242 Fed. Rep. 225; Detroit Steel Cooperage Co. v. Sistersville Brewing Co.,supra; 26 C.J. 677 tit. "Fixtures" § 39; Binkley v. Forkner117 Ind. 176; 3 L.R.A. 33, and note; Fosdick v. Schall,99 U.S. 235; 25 L.Ed. 339, note to 49 L.R.A. (N.S.) 396 (at p.399). A vendor's rights under an agreement by which he retains title to the chattel sold may be waived either expressly or impliedly. Elliott, New Jersey Law of Sales 787; Cole v.Berry, supra; Marvin Safe Co. v. Norton, 48 N.J. Law 410;Campbell *Page 577 Printing Press and Manufacturing Co. v. Rockaway PublishingCo., 56 N.J. Law 676; Hudson Trust and Savings Institution v.Carr-Curran Paper Mills Co., 58 N.J. Eq. 59. Acquiescence by the vendor in a use of the property by the vendee which destroys the identity of the chattel, or results in its incorporation into the realty in such manner as would cause material injury to the freehold by its detachment, would undoubtedly, in most cases, be considered as an implied waiver of the retained title.
In Detroit Steel Cooperage Co. v. Sistersville Brewing Co.,supra, there is a very illuminating discussion of this whole problem by Mr. Justice Holmes, of the United States supreme court. He says, in part:
"The cases to which the possible exception left open in Holt
v. Henley applies are principally those in which the property claimed has become so intimately connected with or embodied in that which is subject to the mortgage that to reclaim it would more or less physically disintegrate the property held by the mortgagee; e.g., Porter v. Pittsburg Bessemer Steel Co.,122 U.S. 267; 30 L.Ed. 1210; 7 Sup. Ct. Rep. 1206. A man sometimes may lose title without his consent, and it has been held that he loses it even to an innocent converter who has added labor of a value far in excess of the original chattel. Wetherbee v.Green, 22 Mich. 311; 7 Am. Rep. 653. When the obvious destination of an article is to be incorporated into a structure in such a way as to remove it would destroy the other work, like bricks or beams in a building, there is still stronger ground for not giving to title an absolute right of way."
Resort by this court has already been had to the commentaries of the commissioners who drafted the Uniform Conditional Sales act in aid of its interpretation. Crown v. Regna ConstructionCo., 104 N.J. Eq. 469; affirmed, 106 N.J. Eq. 192. The draftsman of that act, in commenting on its provisions, said:
"The first sentence of section 7 is intended to perpetuate this common law doctrine that there are limits to the powers of seller and buyer with respect to reservation of title to *Page 578 
fixtures conditionally sold. They may not, as far as persons who have not consented to the reservation are concerned, agree for the reservation of title to an article which is so closely attached to or incorporated into the land as to lose its identity. The test of such close incorporation is that `material injury to the freehold' will result, if the chattel is removed. This phase will doubtless be construed as continuing in force the doctrine stated in the preceding paragraph regarding attachment of such a character as to cause the chattel to become irrevocably a part of the land, regardless of filing. To expect a purchaserof land to look for a conditional sale contract reserving titleto the seller in bricks built into a house, would beunreasonable." Uniform Laws Annotated, vol. 2-A.
But it is argued that the word "freehold" as used in the act refers to the freehold as it existed before, and not after, the annexation of the chattel, citing Campbell v. Roddy, supra.
But the case is not in point. That was a contest between a prior mortgagee of land and a vendor of chattels who had taken a chattel mortgage as security for the purchase price. It was held that the lien of the chattel mortgage should be protected, so far as it would not diminish the security which the real estate mortgagee would have had if the annexation had not been made. There was no retention of title — the chattel mortgage was security, only — and the decision rested "upon an equitable preservation of the lien upon chattels after they are transmuted into realty." In my judgment, the word "freehold," as used in the act, refers to the freehold as it stands at the time as of which the inquiry is made. Where, therefore, the disputed chattel consists of a detachable functional unit, or of any chattel which by annexation has not lost its identity, and is consequently separable without injury either to the freehold or to the chattel itself, the word "freehold" is exclusive of such chattel. But where the personal property is so incorporated into the realty as to lose its identity, and consequently not separable without material injury, then the word "freehold" is inclusive of *Page 579 
that property because it is no longer personalty but has been absorbed and become a part of the realty.
Since the enactment of the Uniform Conditional Sales act there has been a growing tendency amongst contractors and materialmen to make materials of all kinds used in construction work the subject of conditional sales agreement, in which title to the material is retained in the vendor until the property is fully paid for. But these agreements, while binding as to the parties to them, cannot, under all circumstances, be held effective as against third parties, notwithstanding the requirements of the statute are strictly complied with. Wherever by the nature of the thing sold it, of necessity, when used, becomes so intimately incorporated into the structure of which it forms a part, as to become not severable without substantial injury, or where the use contemplated is such that the chattel loses its identity, the retention of title in the vendor is void as to third parties at least. The vendor's acquiescence in such use bars him from asserting the title which he has attempted to retain. Although, as has been shown, there are limitations to the right of a conditional vendor to retain title in himself, that limitation cannot be defined with such certainty as to permit its universal application. Each case must be governed by its own facts and circumstances.
In the instant case the master's conclusion that the property involved was a necessary part of the premises and could not be removed without material injury to the hotel building and the institution of which it formed a part, is a finding of fact not in issue and with respect to which no evidence was submitted. The question before the master was whether or not the property could be removed without material injury to the freehold, as that was the test set up in the statute. I think it is clear, therefore, that the master's findings have been based upon a misconception of the law due to a misinterpretation of the opinion of this court in Future Building and Loan Association v. Mazzocchi,supra, and under such circumstances the court must decide the fact for itself *Page 580 
and apply the law thereto. Riverside Apartment Corp. v.Capitol Construction Co., 107 N.J. Eq. 405.
In the Future Building and Loan Association Case the subject of the controversy consisted of refrigerators, gas ranges and cabinets installed in an apartment house. The vendors had entered into agreements subordinating their rights to the complainant's mortgage. The decision was based entirely upon that subordination agreement. What Vice-Chancellor Backes said at page 425 of the report, beginning with the word "when you consider that the refrigerators and gas ranges are a part of the plant of the apartment house," was by way of obiter, and did not form the basis of his decision. If this case were to be controlled by the law of fixtures, then that comment would be pertinent; but, as has been shown, the issue here is controlled by the law of conditional sales, not by the law of fixtures. Whether or not the chattels were "an integral part of a common plant and with the building formed a unit for the prosecution of a common purpose" (Chancellor v. Cruse, supra), is therefore entirely beside the mark. This leads to a consideration of the exceptions in the order of their statement above.
 CREDIT UTILITY COMPANY, INC.
The property claimed by this defendant consists of the following:
1 only Canopy, 40' x 4'6" x 28" high, hangers $320.
 1 only General Storage Refrigerator, 18' x 11' x 8' high, $2,500.
 1 only Dairy Refrigerator, 9'6" x 5'6" x 8'0" high, $1,100.
1 only L-P Seeger No. 418 Refrigerator $500.
1 only L-P Seeger No. 418 Refrigerator $500.
1 only L-P Seeger No. 418 Refrigerator $500.
1 only Milk and Cream Cabinet, 8' x 2'6" x 30" $280.
1 only Hood, 10' x 4" x 24" high, $90.
 1 only Edison No. NA [*]53 Bake Oven 16.2 K.W. $1,400.
 1 only Mixing Machine Hobart F. 30 with Standard equipment. *Page 581 
The master's report indicates that all this property may be removed from the building by loosening certain bolts and nuts and by disconnecting certain pipes, joints and electrical connections, except as to the General Storage Refrigerator, and that in order to remove that, it will be necessary to disconnect electrical connections, remove its doors and cut certain concrete and cork covering and that the cost and expense of repairs made necessary thereby would be approximately $6 and that the refrigerator was installed at a cost of $2,500. The exceptions are sustained.
 YORK ICE MACHINERY CORPORATION.
The property claimed by this defendant consists of a self-contained refrigerating unit including (1) compressor and motor; (2) brine pump; (3) ice making brine cooling tank; (4) brine coils, inside brine tank and ice cans located therein; (5) refrigeration coils; (6) brine mains and returns; (7) thermostat.
The evidence before the master indicated that all this property could be removed from the building by the simple process of removing certain screws, bolts and nuts and by disconnecting certain pipes. The exceptions are sustained.
 EASTERN NEW JERSEY POWER COMPANY.
The transformers which are the subject of this defendant's claim are not in anywise attached to the land or buildings, except by wires readily detachable by loosening screw connections which are part of the transformers themselves, and the transformers are set on rollers and are easily removable without any injury whatever to the building in which they are placed. They are not necessary to the operation of the hotel, as their only purpose was to effect a reduction in the cost of electrical current used therein. The same current may be supplied by the electric light company at the regular rates by means of the usual electrical connections. The exception is sustained. *Page 582 
 STANDARD WEATHER STRIP AND SCREEN COMPANY, INC.
The property which is the subject of this defendant's claim consists of window and door screens. They are not attached to the defendant's building in any way, but as a matter of fact are detached and stored in a room in the hotel. They are clearly not attached to the freehold so as to become a part thereof and have not lost their character of personal property. The exception is sustained.
 JACOB AND JOSEF KOHN AND MUNDIS, INC.
The property claimed by this defendant consists of chairs and tables which are in nowise affixed to the realty. They have not lost their character of personalty. The master based his finding with respect to this claim upon the fact that the conditional sales contract had not been filed of record in the office of the clerk of Monmouth county; but notwithstanding this fact, the conditional sales agreement is good as against the receivers who stand in the place of the defendant corporation, the conditional vendee, and the complainant has no lien upon these goods as its realty mortgage does not purport to cover chattels and the chattel mortgage is void. The exception is sustained.
 OTIS ELEVATOR COMPANY.
The property the subject of this claim consists of two electric passenger elevators and the necessary equipment for their operation. The master first reported that this property could be detached from the defendant's building without material injury to the freehold and later reported that it could not be detached without material injury to the building and the institution ofwhich it formed a part. It is to this later finding that this defendant's exception is directed. But the Otis Elevator Company, in order to induce the mortgagee to loan the defendant company the amount secured by its mortgage, executed a subordination agreement by which it agreed that said mortgage "should be and remain at all times from and after the delivery thereof, a lien prior *Page 583 
and paramount to any lien or claim we now have or may hereafter have or acquire upon or against said building or buildings and the said lands under and by virtue of the provisions of an `Act to secure to mechanics and others payment for their labor and materials in erecting any building' and the supplements and amendments thereto, or otherwise however, for such work, labor or services performed or to be performed or materials furnished or to be furnished." It is claimed by the Otis Elevator Company that this postponement constituted only a postponement of its right to a mechanics' lien, but that it did not affect their rights as conditional vendors. I cannot accede to that argument. The language of the subordination agreement is broad enough to include claims of any character whether by virtue of the Mechanics' Lien act or otherwise for or on account of this property. The mortgagee was induced to loan its money relying upon the agreement of subordination, and notwithstanding that the language of that agreement might have been more explicit, this claimant is estopped from claiming any rights superior to those of the complainant, the assignee of the mortgagee. The decision of this court in the Future Building and Loan Association Case
is peculiarly applicable to the Otis Elevator Company's claim and the exception is overruled for the reasons stated.
The claim of Troy Laundry Company, Incorporated, was not before the master. The evidence upon which this claim rests was submitted to the court and while the claim is not involved in the master's report it may be disposed of here. The property the subject of the claim consists of several chests affixed upon a clothes ironer, and a tumbler or washing machine. The chests are not attached to the building in any way. The tumbler rests upon the floor but is not attached to it. The only connection with the building is by means of a steam pipe and to remove it it is necessary only to sever this connection. The property is clearly removable without material injury to the freehold and the vendor may remove it.
I will advise a decree accordingly. *Page 584